**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD O. MANNING, M.D.;
RALEIGH WOMEN'S HEALTH
ORGANIZATION, INCORPORATED; TAKEY
CRIST, M.D., on their own behalf
and on behalf of their minor
patients,
Plaintiffs-Appellants,

v.

JAMES B. HUNT, JR., Governor of the
State of North Carolina, in his
official capacity; RONALD L. MOORE,
District Attorney of Buncombe

County, in his official capacity;
PETER S. GILCHRIST, III,
Mecklenburg County District
Attorney, in his official capacity;
C. WILLOUGHBY, JR., Wake County
District Attorney, in his official
capacity; WILLIAM H. ANDREWS,
Onslow County District Attorney, in
his official capacity,
Defendants-Appellees.

NORTH CAROLINA RIGHT TO LIFE,
INCORPORATED,
Amicus Curiae.

No. 95-3181

RICHARD O. MANNING, M.D.;
RALEIGH WOMEN'S HEALTH
ORGANIZATION, INCORPORATED; TAKEY
CRIST, M.D., on their own behalf
and on behalf of their minor
patients,
Plaintiffs-Appellants,

v.

JAMES B. HUNT, JR., Governor of the
State of North Carolina, in his
official capacity; RONALD L. MOORE,
District Attorney of Buncombe

County, in his official capacity;
PETER S. GILCHRIST, III,
Mecklenburg County District
Attorney, in his official capacity;
C. WILLOUGHBY, JR., Wake County
District Attorney, in his official
capacity; WILLIAM H. ANDREWS,
Onslow County District Attorney, in
his official capacity,
Defendants-Appellees.

NORTH CAROLINA RIGHT TO LIFE,
INCORPORATED,
Amicus Curiae.

No. 95-3182

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CA-95-229-1-T)

Argued: April 3, 1996

Decided: May 22, 1996

Before WIDENER, MURNAGHAN, and WILLIAMS,
Circuit Judges.

2

Vacated and remanded by unpublished per curiam opinion. Judge Widener wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Deborah Koff Ross, ACLU-NC LEGAL FOUNDA-TION, Raleigh, North Carolina, for Appellants. Grady L. Balentine, Jr., Assistant Attorney General, Raleigh, North Carolina, for Appellees. **ON BRIEF:** C. Frank Goldsmith, Marion, North Carolina; Ellen W. Gerber, High Point, North Carolina; Catherine Weiss, Laura K. Abel, Reproductive Freedom Project, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellants. Michael F. Easley, North Carolina Attorney General, Mabel Y. Bullock, Special Deputy Attorney General, Raleigh, North Carolina, for Appellees. Paul Stam, Jr., Theodore S. Danchi, Apex, North Carolina, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal involves a facial challenge to the constitutionality of North Carolina's Act to Require Parental or Judicial Consent for an Unemancipated Minor's Abortion (the Act), 1995 N.C. Adv. Legis. Serv. 108 (to be codified at N.C. Gen Stat. § 90-21.6 to .10). Appellants, two doctors who perform abortions on unemancipated minors and a provider of abortion services, appeal an order of the district court denying in part their request for an order enjoining enforcement of the Act pending resolution of their constitutional challenge. Appellees, the Governor of North Carolina and several district attorneys, cross-appeal the portion of the district court's order granting injunctive relief with respect to one provision of the Act. Because we con-

3

clude that the district court erred in its application of the standards governing the grant or denial of a preliminary injunction, we vacate the order granting in part and denying in part preliminary injunctive relief and remand for further proceedings.

I.

The Act, adopted during the 1995 session of the North Carolina General Assembly, provides that before an unemancipated minor[1] may obtain an abortion, she must first give her own consent and obtain the consent of:

> (1) A parent with legal custody of the minor; or
>
> (2) The legal guardian or legal custodian of the minor; or
>
> (3) A parent with whom the minor is living; or
>
> (4) A grandparent with whom the minor has been living for at least six months immediately preceding the date of the minor's written consent.

N.C. Gen. Stat. § 90-21.7(a). A pregnant minor may petition a state district court judge[2] for a waiver of the parental consent requirement if none of the persons capable of giving consent is available, all of the persons capable of giving consent refuse to do so, or the minor does not wish to obtain consent from any person capable of giving consent. Id. § 90-21.7(b).

_____

[1] The Act defines an "unemancipated minor" as any person under the age of 18 who has not been married and who has not been emancipated pursuant to North Carolina law. N.C. Gen. Stat.§ 90-21.6(1).
[2] The Act provides that jurisdiction over a petition for waiver of the parental consent requirement rests with "the district court judge assigned to the juvenile proceedings in the district court where the minor resides or where she is physically present." N.C. Gen. Stat. § 90-21.7(b). North Carolina district courts have original jurisdiction over, inter alia, civil suits in which the amount in controversy is $10,000 or less, domestic relations matters, and misdemeanor criminal actions. N.C. Gen Stat. §§ 7A-243, -244, & -272 (Michie 1995).

In ruling on the petition for a waiver of the parental consent requirement, the district court judge must conduct a hearing to receive evidence concerning the minor's "emotional development, maturity, intellect, and understanding . . . ; the nature, possible consequences, and alternatives to the abortion; and any other evidence that the court may find useful in determining whether the parental consent requirement shall be waived." Id. § 90-21.8(d). The district court judge may waive the parental consent requirement if he finds that the minor is sufficiently mature and well informed to make her own decision regarding an abortion, that a waiver of the parental consent requirement is in the minor's best interests, or that the minor is a victim of rape or felonious incest. Id. § 90-21.8(e). If the district court judge finds that the minor has been a victim of rape or incest, he is required to report this finding to the Director of the Department of Social Services (DSS). Id. § 90-21.8(f).**3** The district court judge must set forth his ruling and the evidence supporting it in a written order. Id.

The district court judge must rule within seven days of the filing of the petition. Id. § 90-21.8(d). If the district court judge denies the petition, the minor may appeal to the superior court; in order to pursue such an appeal, she must file a notice of appeal to the superior court within twenty-four hours of the district court judge's decision. Id. § 90-21.8(h). The superior court must hold a de novo hearing within seven days of the filing of the notice of appeal. Id. By rule, the North Carolina Supreme Court has provided that the superior court must issue its ruling within forty-eight hours of the hearing. During the entire course of proceedings on the petition, the minor is entitled to the assistance of a guardian ad litem, an attorney, or both, at no cost. Id. § 90-21.8(c). The Act also provides that proceedings before the district court judge and the superior court are to be confidential, id. § 90-21.8(d), (h), and that the minor may request that her parent, guardian, or custodian not be notified of the proceedings, id. § 90-21.8(g).

---

**3** The Act requires only that a finding of incest be reported to DSS. Rules promulgated by the North Carolina Supreme Court require a finding of rape to be reported, as well. In addition, North Carolina law imposes a duty upon "[a]ny person or institution who has cause to suspect that any juvenile is abused" to report those suspicions to DSS. N.C. Gen. Stat. § 7A-543 (Michie 1995).

Appellants challenged the validity of the Act under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution, seeking preliminary and permanent injunctive relief, a judgment declaring the Act unconstitutional, and attorneys' fees. Appellants argued that the Act imposed an undue burden[4] on a pregnant minor's right to an abortion by: (1) failing to provide a clear definition of the term "parent with custody"; (2) failing to provide an adequate, expeditious, and confidential bypass for a minor who appeals the denial of her petition to the North Carolina Court of Appeals or Supreme Court; (3) requiring that the minor appeal an adverse decision by the district court judge within twenty-four hours; (4) requiring that the minor undergo a de novo hearing before the superior court; (5) requiring that the minor state affirmatively that she does not want her parent, guardian, or custodian to be notified that she has petitioned for a waiver of the parental consent requirement; and (6) requiring that a finding of rape or incest be reported to DSS (the "reporting requirement").

The district court granted preliminary injunctive relief with respect to the reporting requirement, but denied Appellants' request for a preliminary injunction in all other respects. We subsequently granted Appellees' motion for a stay of injunction pending appeal. In challenging the district court's ruling, Appellants argue first that the district court erred in its application of the standard enunciated in Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977), for determining whether injunctive relief is appropriate, and second, that injunctive relief should have been granted with respect to all provisions of the Act. On cross-appeal, Appellees contend that the district court erred in preliminarily enjoining the reporting requirement. Because we find Appellants' first challenge requires us to vacate the district court's order in its entirety, we do not address in detail the remaining contentions of the parties.

_____

[4] **See Planned Parenthood v. Casey**, 112 S. Ct. 2791, 2819 (1992) (setting forth "undue burden" standard governing constitutionality of laws restricting access to abortions).

II.

A.

We find it useful to preface our examination of the district court's application of the Blackwelder standard with a discussion of the applicable law. Under the well-settled law of this circuit, the consideration of four factors governs the district court's decision whether to grant a preliminary injunction:

> "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>
> (2) the likelihood of harm to the defendant if the requested relief is granted,
>
> (3) the likelihood that the plaintiff will succeed on the merits, and
>
> (4) the public interest."

Direx Israel, Ltd. v. Breakthrough Medical Corp. , 952 F.2d 802, 812 (4th Cir. 1991) (quoting Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). As we explained in Direx Israel, the district court's first task is to determine what harm will be suffered by the plaintiff in the event that a preliminary injunction is denied. Upon determining that the denial of a preliminary injunction will cause the plaintiff irreparable harm that is "`neither remote nor speculative, but actual and imminent,'" the district court must proceed to balance that harm against the harm to the defendant resulting from the grant of a preliminary injunction. Id. (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)). The result of this balancing determines the degree to which the plaintiff must show a likelihood of success on the merits in order to obtain a preliminary injunction:

> "If, after balancing those two factors [i.e., irreparable harm to plaintiff against harm to the defendant], the balance `tips decidedly' in favor of the plaintiff, a preliminary injunction

7

will be granted if `the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' As the balance tips away from the plaintiff, a stronger showing on the merits is required."

Id. at 812-13 (quoting Rum Creek, 926 F.2d at 359).

We emphasized in Direx Israel that the importance of the balance-of-hardships evaluation mandates that it "precede the determination of the degree by which the plaintiff must establish the likelihood of success on his part." Id. at 813; see also Hughes Network Sys., Inc. v. Interdigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994) (noting that "[t]he `balance of hardships' reached by comparing the relevant harms to the plaintiff and defendant is the most important determination" in applying the Blackwelder factors). Indeed, in Blackwelder we vacated the district court's order denying a preliminary injunction based in part on the court's failure to balance the hardships before considering the plaintiff's likelihood of success on the merits. See Blackwelder, 550 F.2d at 195; see also Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 788 (4th Cir. 1991) (holding that court could not affirm the grant of a preliminary injunction "in the absence of evidence that the district court engaged in a specific test of the balance of the hardships" and remanding for consideration of the hardships); Maryland Undercoating Co. v. Payne, 603 F.2d 477, 482 (4th Cir. 1979) (vacating order granting preliminary injunction in part because the district court failed to balance the hardships). As we later explained in Direx Israel, vacatur was necessary in Blackwelder because"[u]ntil that balance of harm has been made, the district judge cannot know how strong and substantial must be the plaintiff's showing of `likelihood of success.'" Direx Israel, 952 F.3d at 814.

We review for abuse of discretion the district court's order granting in part and denying in part injunctive relief. In the context of the grant or denial of a preliminary injunction, however, abuse of discretion is not a "`merely perfunctory'" standard of appellate review; rather, we must carefully examine the district court's order to determine whether the court complied with established principles. Id. at 814-15 (quoting Roland Machinery Co. v. Dresser Indus., 749 F.2d 380, 389 (7th Cir.

8

1984)). We will not hesitate to consider the district court's decision an abuse of discretion if it was made through application of an improper legal standard. See Rum Creek Coals Sales, Inc. v. Caperton, 926 F.2d 353, 358 (4th Cir. 1991).

B.

Here, a cursory examination of the district court's order reveals that the court improperly applied the Blackwelder test by considering first whether Appellants had shown a likelihood of success on the merits. See Manning v. Hunt, No. 1:95cv229-T, at 12 (W.D.N.C. Nov. 30, 1995) ("In order to conduct the balancing test required by Rule 65(a), Federal Rules of Civil Procedure, it is necessary for this court to first consider whether plaintiffs are likely to succeed on the merits of their claims."). The district court compounded this error by failing to articulate the degree of likelihood of success on the merits Appellants needed to show in order to obtain injunctive relief; rather, with respect to each issue, the district court merely noted whether Appellants had, or had not, shown a likelihood of success. Moreover, the district court failed to balance the hardships with respect to all of the issues, doing so only as to the reporting requirement, the only one of Appellants' claims the district court found to have a likelihood of success. Furthermore, the balancing conducted by the district court with respect to the reporting requirement was inadequate in at least two respects. First, the balancing followed the district court's determination regarding Appellants' likelihood of success on the merits of that issue, rather than preceding that determination, as Blackwelder directs. Second, the district court's balancing appears to have been guided almost entirely by its conclusion that Appellants were likely to succeed on the merits of their challenge to the reporting requirement. We have previously expressed disapproval of just such a conflation of the balance of hardships and the likelihood of success. See Direx Israel, 952 F.2d at 817 (concluding that the district court's determination that the balance of hardships favored plaintiffs based on its finding that plaintiffs were likely to succeed on the merits "was clear error in the application of the hardship test").

III.

We conclude that the district court incorrectly applied the Blackwelder test in ruling on Appellants' motion for preliminary

9

injunction. Accordingly, we vacate the district court's order in its entirety and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

WIDENER, Circuit Judge, concurring:

I concur in the result.

10